IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 6:19-cv-1780 |
| | ) | |
| ANGELA NURSE; JOE LEON; WENDY | ) | |
| EDWARDS; and SIMPLE SOLUTIONS FL, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF

The United States of America, for its complaint against Angela Nurse, Joe Leon, Wendy

Edwards, and Simple Solutions FL, LLC, alleges the following:

1.     This is a civil action brought by the United States under 26 U.S.C. §§ 7402, 7407,

and 7408 to enjoin Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC,

and anyone in active concert or participation with them, from:

   a.   acting as federal tax return preparers or requesting, assisting in, or
        directing the preparation or filing of federal tax returns, amended returns,
        or other related documents or forms for any person or entity other than
        themselves;

   b.   preparing or assisting in preparing federal tax returns that they know or
        reasonably should know would result in an understatement of tax liability
        or the overstatement of federal tax refund(s) as penalized by 26 U.S.C. §
        6694;

   c.   owning, operating, managing, working in, investing in, providing capital
        or loans to, receiving fees or remuneration from, controlling, licensing,
        consulting with, or franchising a tax return preparation business;

   d.   training, instructing, teaching, and creating or providing cheat sheets,
        memoranda, directions, instructions, or manuals, pertaining to the
        preparation of federal tax returns;

     e.   maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

     f.   engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

     g.   engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

This action also seeks, under 26 U.S.C. § 7402, an order requiring Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC, to disgorge to the United States the ill-gotten gains that Nurse, Leon, Edwards, and Simple Solutions FL, LLC received (in the form of tax preparation fees subtracted from tax refunds issued by the United States Treasury) for the preparation of federal tax returns making grossly incompetent, negligent, reckless, false, and/or fraudulent claims.

## Authorization

2.     This action has been requested and authorized by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General of the United States, pursuant to 26 U.S.C. §§ 7402, 7407, and 7408.

## Jurisdiction and Venue

3.     Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402(a).

4.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Nurse and Edwards reside in this judicial district, and Simple Solutions FL, LLC has its principal place of business in Daytona Beach, Florida, within this district, and a substantial part of the activities giving rise to this suit occurred in this judicial district.

**Defendants**

5.      Angela Nurse resides in Ormond Beach, Florida.  Nurse has been preparing tax

returns for others since at least 2014.  In 2018, Nurse was an owner of (and prepared tax returns

in the name of) Simple Solutions FL, LLC, preparing tax returns at the store located at 725 Dr.

Mary McLeod Bethune Blvd., Daytona Beach, FL.  Prior to 2018, Nurse prepared tax returns at

Unik Tax Refund and D&M Tax Solutions.  The following number of tax returns identify Nurse

as the paid preparer in 2016, 2017, 2018, and 2019:

| Processing Year | Total Number of Returns | Number of Returns Claiming a Refund | % of Returns Claiming a Refund | Number and % of Returns Claiming EITC[1] |
|---|---|---|---|---|
| 2016 | 181 | 181 | 100% | 140 (77%) |
| 2017 | 118 | 118 | 100% | 90 (76%) |
| 2018 | 49 | 49 | 100% | 33 (67%) |
| 2019 | 48 | 48 | 100% | 37  77%) |

6.      Joe Leon resides in Boca Raton, Florida.  Leon has been preparing tax returns for

others since at least 2016.  In 2018 and 2019, Leon was employed at the Simple Solutions FL,

LLC stores located at 4750 E. Moody Blvd., Suite 213, Bunnell, FL and 725 Dr. Mary McLeod

Bethune Blvd., Daytona Beach, FL, respectively.

7.      Prior to 2018, Leon prepared tax returns at UJM Tax Services. The following

number of tax returns identify Leon as the paid preparer in 2016, 2017, 2018, and 2019:

| Processing Year | Total Number of Returns | Number of Returns Claiming a Refund | % of Returns Claiming a Refund | Number and % of Returns Claiming EITC |
|---|---|---|---|---|
| 2016 | 139 | 138 | 99% | 85 (61%) |
| 2017 | 65 | 65 | 100% | 39 (60%) |
| 2018 | 174 | 172 | 98% | 110 (63%) |
| 2019 | 101 | 100 | 99% | 77 (76%) |

---

[1] The Earned Income Tax Credit, a refundable tax credit available to certain low-income working people in varying amounts based on the taxpayer's income, filing status, and claimed number of dependents.

8.      Wendy Edwards resides in Daytona Beach, Florida.  Edwards has been preparing tax returns for others since at least 2017.  In 2018 and 2019, Edwards was employed at the Simple Solutions FL, LLC store located at 725 Dr. Mary McLeod Bethune Blvd., Daytona Beach, FL.  Prior to 2018, Edwards prepared tax returns at the D&M Tax Solutions store also located at 725 Dr. Mary McLeod Bethune Blvd.  The following number of tax returns identify Edwards as the paid preparer in 2017, 2018, and 2019:

| Processing Year | Total Number of Returns | Number of Returns Claiming a Refund | % of Returns Claiming a Refund | Number and % of Returns Claiming EITC |
|---|---|---|---|---|
| 2017 | 20 | 20 | 100% | 14 (70%) |
| 2018 | 118 | 117 | 99% | 95 (80%) |
| 2019 | 148 | 148 | 100% | 120 (81%) |

9.      Simple Solutions FL, LLC was incorporated in the State of Florida on or about November 20, 2017.  Nurse initially served as the Registered Agent of Simple Solutions FL, LLC.  The Employer Identification Number ("EIN") associated with Simple Solutions FL, LLC is held in Nurse's name, and identifies Nurse as the sole member of Simple Solutions FL, LLC.

10.     The Articles of Organization identified the officers of Simple Solutions FL, LLC identified as Rashad Townes (Towns) and Les Hewitt. Towns was not aware that he was identified as an officer of the corporation and, on or about June 22, 2018, Towns notified the Florida Secretary of State's office that he was resigning or disassociating from Simple Solutions FL, LLC effective November 17, 2017 (which was the effective date for the company).  On or about October 30, 2018, Simple Solutions FL, LLC filed an amended annual report identifying the officers as Hewitt, Lois Cooper, and Mario Cooper. Mario Cooper is identified as the "Chairman."  Mario Cooper owned and operated a tax preparation business called D&M Tax Solutions, where Nurse previously worked preparing tax returns. This Court entered a preliminary injunction on December 7, 2017, and a permanent injunction on April 30, 2018,

barring Mario Cooper from acting as a federal tax return preparer "and assisting in, advising, or directing the preparation or filing of federal tax returns, amended returns, or any other federal tax documents or forms for any person or entity other than" himself; "investing in, providing capital or loans to, or receiving fees or remuneration from a tax return preparation business; and owning, operating, managing, working in, controlling, licensing, consulting with, or franchising a tax return preparation business." *See United States v. Yves Demesmin, et al.*, Case No. 6:17-cv-36, docket nos. 61 and 112 (M.D. Fla.) (quoting preliminary injunction, docket no. 61).

11.     Since its incorporation in November 2018, Simple Solutions FL, LLC has operated three tax preparation stores located at 725 Dr. Mary McLeod Bethune Blvd. in Daytona Beach, FL (a former D&M Tax Solutions location), 108 N. 19th St., Palatka, FL (a former D&M Tax Solutions location), and 4750 E. Moody Blvd., Suite 213, Bunnell, FL.

12.     Simple Solutions FL, LLC is identified as the tax preparation firm on the following number of tax returns filed in 2018 and 2019:

| Processing Year | Total Number of Returns | Number of Returns Claiming a Refund | % of Returns Claiming a Refund | Number and % of Returns Claiming EITC |
|---|---|---|---|---|
| 2018 | 693 | 690 | 99% | 539 (77%) |
| 2019 | 690 | 688 | 99% | 559 (81%) |

13.     Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC, prepare tax returns for compensation. Nurse and Simple Solutions, FL, LLC also employ others who prepare tax returns for compensation.

### Background

14.     In 2014, Yves Demesmin began operating tax return preparation stores under the name Unik Tax Refund. In 2014, Mario Cooper worked as an Area Manager, where his job was to assist Yves Demesmin in overseeing 7 Unik Tax Refund stores. In 2015, Mario Cooper began preparing tax returns under the name D&M Tax Solutions. The United States obtained

injunctions against Yves Demesmin, Unik Tax Refund, and Mario Cooper barring them from preparing federal tax returns and owning and operating a tax preparation business, as well as orders of disgorgement against them. *See United States v. Yves Demesmin, et al.*, Case No. 6:17-cv-36 (M.D. Fla.).

15.     Nurse began preparing tax returns in 2014 at a Unik Tax Refund store owned and operated by Yves Demesmin.  Nurse subsequently worked at a D&M Tax Solutions store operated by Mario Cooper.

16.     Leon began preparing tax returns in 2016 at a UJM Tax Services store owned and operated by Joseph Demesmin. The United States obtained injunctions against Joseph Demesmin and UJM Tax Services barring them from preparing federal tax returns and owning and operating a tax preparation business, as well as orders of disgorgement against them. *See United States v. Yves Demesmin, et al.*, Case No. 6:17-cv-36 (M.D. Fla.).

17.     Edwards began preparing tax returns in 2017 at a D&M Tax Solutions store owned or operated by Mario Cooper.

**Business Structure**

18.     The Defendants utilize the business structure and business model created and used by LBS, Unik Tax Refund, UJM Tax Services, and D&M Tax Solutions.  Nurse and Simple Solutions FL, LLC do not require the store managers and the tax return preparers that they employ or oversee, including Leon and Edwards, to have any tax return preparation experience, knowledge of federal tax laws or accounting, or minimum education.

19.     Similarly, Nurse and Simple Solutions FL, LLC fail to teach managers and tax return preparers crucial elements related to basic tax return preparation. Nurse's and Simple Solutions FL, LLC's tax return preparation training covers instruction on data entry using tax

6

return preparation software and preparing practice tax returns so that preparers know where to enter information in the preparation software.  The supplier of the tax return preparation software does not provide in-person training or training on tax law.

20.     Nurse and Simple Solutions FL, LLC train and instruct managers and tax return preparers, including Leon and Edwards, on how to prepare tax returns that improperly claim bogus refunds based on false claims, credits, and deductions, in order to falsely and improperly maximize customers' tax refunds and to maximize the fees extracted from those refunds. Nurse and Simple Solutions FL, LLC also train managers and tax return preparers, including Leon and Edwards, to increase the tax return preparation fees charged to customers as they increase the customers' bogus refunds.

21.     Nurse and Simple Solutions FL, LLC provide instruction sheets to managers and tax return preparers, including Leon and Edwards, directing the preparers to input specific information into the tax preparation software to create the maximum bogus refund for customers. Nurse and Simple Solutions FL, LLC also provide scripts directing employees, including Leon and Edwards, on how to interact with customers and potential customers.  This includes scripts informing customers that they will be receiving a refund, although not all customers legally qualify for a refund.

22.     The purpose of these scripts is to solicit customers and, once those customers have come in the door, to run up the tax return preparation fees by attaching unnecessary forms to the return at an additional charge to the customer.  The Defendants include bogus claims, credits, and deductions on these forms to generate a higher refund for the customer, and use this higher refund to justify the additional (and often undisclosed) tax return preparation fees.

23.     The Defendants deliver on their promise of a refund.  For example, of the 1,383

tax returns filed in 2018 and 2019 identifying the EIN of Simple Solutions FL, LLC as the paid

preparation firm, only 5 tax returns did not claim a refund.

### The Defendants' Activities

24.     The Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at

their direction and with their knowledge and consent, prepare tax returns to generate bogus

refunds for customers, enabling the Defendants to charge exorbitant fees and maximize profits at

the expense of the United States Treasury.

25.     Many of the Defendants' customers earn low to moderate incomes and lack

knowledge regarding tax law and tax return preparation. Customers often have no knowledge

that the Defendants have prepared and filed false tax returns on their behalf.  For others, the

Defendants mislead customers about what can "legally" be claimed on their tax returns,

particularly with respect to various credits and deductions, and by promising customers

thousands of dollars of (illegal) refunds to convince them to have the Defendants prepare their

tax returns.

26.     The Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at

their direction and with their knowledge and consent, make false claims on tax returns,

particularly on the forms attached to those returns, in order to improperly increase customers'

refunds.  After completing the returns, the Defendants falsely tell the customers that these forms

legally increased the customers' refunds, and charge higher (and often undisclosed) fees due to

the additional forms and the higher refund that the Defendants claimed.  The Defendants charge

customers fees for preparing the return, fees for each tax form attached to the return, and fees for

filing the return. These fees are all deducted from the customer's tax refund, often without the customer being told the amount that the Defendants actually charged for preparing the tax return.

27. The Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at their direction and with their knowledge and consent, request on customers' tax returns a refund amount that is not based on the customer's actual income, expenses, deductions, and applicable qualifying credits. Instead, the refund is based on fabricated income, expenses, deductions, and credits reported by the Defendants.

28. The Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at their direction and with their knowledge and consent, engage in unlawful tax return preparation practices including:

a. Making fraudulent claims for the Earned Income Tax Credit;

b. Circumventing due diligence requirements in order to fraudulently maximize the Earned Income Tax Credit;

c. Improperly claiming false filing status, such as Head of Household when the customer is actually married;

d. Fabricating businesses and related business income and expenses;

e. Fabricating itemized deductions, including for unreimbursed employee business expenses and charitable contributions;

f. Reporting inflated federal income tax withholdings that far exceed the amounts actually reported on customers' Forms W-2;

g. Improperly preparing returns based on pay stubs rather than Wage and Income Statements Forms W-2;

h. Failing to provide customers with a copy of the completed tax return;

i. Failing to identify the actual paid preparer of the tax return; and

j. Charging deceptive and unconscionable fees.

**Phony Claims for the Earned Income Tax Credit
and Failure to Comply with Due Diligence Requirements**

29.     The Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at

their direction and with their knowledge and consent, prepare tax returns that include fraudulent

claims for the Earned Income Tax Credit ("EITC") often based on fabricated business income

and expenses, bogus or improperly-claimed dependents, and/or false filing status.

30.     The EITC is a refundable tax credit available to certain low-income working

people.  The amount of the credit is based on the taxpayer's income, filing status, and claimed

number of dependents.  *See* 26 U.S.C. § 32 and the accompanying Treasury Regulations.

Because the EITC is a refundable credit, claiming an EITC can, in certain circumstances, reduce

a taxpayer's federal tax liability below zero, entitling the taxpayer to a payment from the U.S.

Treasury.

31.     Due to the method used to calculate the EITC, an individual can claim a larger

EITC by claiming multiple dependents and, for certain income ranges, individuals with higher

earned income are entitled to a larger credit than those with lower earned income.  The amount

of the credit increases as income increases between $1 and $14,000, and decreases as income

increases beyond $18,350.  Some tax preparers who manipulate reported income to maximize the

EITC refer to this range of earned income corresponding to a maximum EITC as the "sweet

spot" or "golden range."  For tax year 2017, the maximum EITC was $6,318 and was available

to eligible individuals with three dependent children who earned income between $14,000 and

$18,350.

32.     Because of the way the EITC is calculated, reporting more income, up to a certain

point, allows customers to receive a larger refundable credit.  Similarly, claiming losses to offset

higher income to decrease the total reported income and to fall within the "sweet spot" allows customers to claim a larger refundable credit.

33.     The Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at their direction and with their knowledge and consent, falsify information to claim the maximum EITC for customers.  For example, to bring the customer's reported earned income within the "sweet spot" for the EITC, and depending on a customer's actual income, the Defendants and their employees inflate or fabricate business income reported on a Form Schedule C, "Profit or Loss from Business (Sole Proprietorship)" (used to report income and expenses from a sole proprietorship), in order to fraudulently increase customers' reported earned income, or claim bogus Schedule C expenses to fraudulently decrease customers' reported earned income.

34.     Because of the potential for abuse in claiming the EITC, Congress has authorized the Secretary of the Treasury to impose "due diligence" requirements on federal tax return preparers claiming the EITC for their customers. *See* 26 U.S.C. § 6695(g). These "due diligence" requirements obligate the tax return preparer to make "reasonable inquiries" to ensure the customer is legitimately entitled to the EITC.  The tax return preparer may not "ignore the implications of information furnished to, or known by, the tax return preparer, and must make reasonable inquiries if the information furnished to the tax return preparer appears to be incorrect, inconsistent, or incomplete." *See* 26 C.F.R. § 1.6695-2 (2011).  Tax return preparers must also document their compliance with these requirements and keep that documentation for three years. *Id*.

35.     The Defendants fail to comply with the due diligence requirements.  The Defendants show an intentional disregard for the tax laws and in particular for the due diligence requirements.

11

**Fabricated Schedule C Business Income and Expenses**

36.     The Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at their direction and with their knowledge and consent, prepare tax returns reporting non-existent businesses on bogus Forms Schedule C.  On some of these returns, the Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at their direction and with their knowledge and consent, report substantial income, but little or no expenses.  On other returns, the Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at their direction and with their knowledge and consent, report substantial expenses, but little or no income.  The determining factor is whether the tax return preparer needs to inflate a customer's income (or create income when the customer has none) to bring the reported income within the EITC "sweet spot," or to lower the taxable income of a customer who has actual income (such as wages reported on a Form W-2) in order to either bring the income within the EITC "sweet spot" or simply to create a phony business loss to offset the customer's wages and falsely or fraudulently reduce the customer's income tax liability.

**Customer 1**

37.     For example, Nurse prepared the 2013 federal income tax return of Customer 1 of Orange City, Florida. Customer 1 worked in the military in 2013.  Customer 1 did not own or operate a business, and did not inform Nurse that he owned or operated a business.

38.     On the Schedule C attached to the tax return, Nurse falsely reported that Customer 1 owned a business identified by name as "DFASIN JAMBF" (the military employer as identified on Customer 1's Form W-2) through which Customer 1 purportedly had no sales and received no gross receipts, but incurred car and truck expenses in the amount of $14,125 (for purportedly driving 25,000 miles for a business).  Customer 1 did not provide this information to

12

Nurse and was not aware that she reported it on his tax return, as Nurse never reviewed the completed tax return with him. By reporting a phony $14,125 business loss, Nurse claimed a bogus refund of $2,126 on Customer 1's 2013 tax return.

39.     Leon prepared Customer 1's 2015 federal income tax return. On the Schedule C attached to Customer 1's 2015 tax return, Leon falsely reported that Customer 1 owned a business, not identified by name or type of business, through which Customer 1 purportedly had no sales and received no gross receipts, but incurred expenses totaling $26,045, including $75 for advertising, $9,689 for car and truck expenses (for purportedly driving 16,850 business miles), $6,000 for renting business property, $1,750 for utilities, $75 for wages, $1,500 for a cell phone, $1,656 for insurance, $4,550 for gas (while simultaneously claiming bogus vehicle expenses based on the standard mileage rate), and $750 for uniforms.  Customer 1 did not incur these expenses, did not provide these amounts to Leon, and did not know that Leon reported this information related to a non-existent business on his tax return. By reporting a phony $26,045 business loss, Leon claimed a bogus refund of $4,995 on Customer 1's 2015 tax return.

**Customer 2**

40.     Leon prepared the 2015 federal income tax return of Customer 2 of Bunnell, Florida. Customer 2 was employed at the Flagler County Sherriff's Office, which issued her a Form W-2 that she provided to Leon when having the tax return prepared.  Customer 2 did not own or operate a business, and did not inform Leon that she owned or operated a business.

41.     On the Schedule C attached to the tax return, Leon falsely reported that Customer 2 owned a business, identified as "Form 1099 from Flagler County Sheriffs," through which Customer 2 purportedly received $911 in gross receipts, but incurred expenses totaling $23,462, including $75 for advertising (the same amount as reported on Customer 1's 2015 tax return),

$9,056 for car and truck expenses (for purportedly driving 15,750 business miles), $8,400 for

renting business property, $1,500 for utilities, $75 for wages (the same amount as reported on

Customer 1's 2015 tax return), $648 for a cell phone, $1,128 for insurance, $2,080 for gas (while

simultaneously claiming bogus vehicle expenses based on the standard mileage rate), and $500

for uniforms.  Leon asked Customer 2 about personal expenses, such as insurance, car payments,

and household bills, but did not explain why.  However, Customer 2 did not incur these reported

expenses, did not provide these amounts to Leon, and did not know that Leon reported this

information related to a non-existent business on her tax return. By reporting a phony $22,551

business loss, Leon claimed a bogus refund of $6,103 on Customer 2's 2015 tax return.

**Customers 3 and 4**

42.     Leon prepared the 2015 federal income tax return of Customers 3 and 4 of Palm

Coast, Florida. Customer 3 was employed at a nursing facility and Customer 4 was employed at

a home repair business.  Neither Customer 3 nor Customer 4 owned or operated a business, and

they did not inform Leon that they owned or operated a business. Leon did not ask any questions

about whether they owned a business.

43.     On the Schedule C attached to the tax return, Leon falsely reported that Customer

4 owned a business, reported as "JESUSHOMEREPAIRPAINT," through which Customer 4

purportedly received $1,000 in gross receipts, but incurred expenses totaling $22,928, including

$75 for advertising (the same amount as reported on the 2015 tax returns of Customers 1 and 2),

$7,200 for renting business property, $2,500 for meals and entertainment, $1,250 for utilities,

$75 for wages (the same amount as reported on the 2015 tax returns of Customers 1 and 2),

$4,488 for car insurance, $3,640 for gas (while simultaneously claiming bogus vehicle expenses

based on the standard mileage rate), and $1,200 for cell phones.  Customer 4 did not incur these

reported expenses, did not provide these amounts to Leon, and did not know that Leon reported this information related to a non-existent business on his tax return. By reporting a phony $21,928 business loss, Leon claimed a bogus refund of $5,158 on the 2015 tax return of Customers 3 and 4.

### Customers 5 and 6

44.      Edwards prepared the 2017 federal income tax return of Customers 5 and 6 of Daytona Beach, Florida. The tax return was prepared at the Simple Solutions store in Daytona Beach. Customer 5 was employed as a shuttle driver at a car dealership and Customer 6 was employed working in accounts payable at a car dealership.  Customer 5 also drove approximately 400 miles as an Uber driver for a couple of months in 2017.

45.      On the Schedule C attached to the tax return, Edwards falsely reported that Customer 5 received $800 in gross receipts driving for Uber, and incurred expenses totaling $15,586, including $15,301 in car and truck expenses (for purportedly driving 28,600 business miles) and $285 for Uber fees.  Customer 5 did not incur these reported expenses, did not provide these amounts to Edwards, and did not know that Edwards reported this information on the tax return. By reporting a phony $14,771 business loss, along with fabricated expenses claimed on a Form Schedule A attached to the tax return, discussed in paragraphs 90-91, *infra*, Edwards claimed a bogus refund of $6,138 on the 2017 tax return of Customers 5 and 6.

### Customer 7

46.      Customer 7 of Palm Coast, Florida had his 2017 federal income tax return prepared at the Simple Solutions store in Daytona Beach.  Nurse assisted the preparer in preparing the tax return.  Customer 7 was employed as a nurse in 2017 and also performed some

private-duty nursing work outside of his employment, through which he made up to $1,000 during the year.

47.     On the Schedule C attached to the tax return, the preparer falsely reported that Customer 7 owned a personal training business, through which Customer 7 purportedly received $1,650 in gross receipts, but incurred expenses totaling $26,028, including $14,725 for car and truck expenses (for purportedly driving 27,524 business miles), $2,635 for repairs and maintenance, $3,775 for supplies, $2,500 for travel, and $2,125 for a cell phone. Customer 7 did not incur these reported expenses, did not provide these amounts to the preparer, and did not know that the preparer reported this information related to a non-existent personal training business on his tax return. By reporting a phony $24,378 business loss, the Simple Solutions preparer claimed a bogus refund of $5,196 on Customer 7's 2017 tax return. The preparer did not review the completed tax return with Customer 7.

### Customer 8

48.     Customer 8 of Daytona Beach, Florida had her 2017 federal income tax return prepared at the Simple Solutions store in Daytona Beach. Customer 8 was self-employed doing housekeeping work in 2017 and estimates that she earned approximately $7,200. Customer 8 also receives government financial assistance for herself and her three children.

49.     On the Schedule C attached to the tax return, the preparer falsely reported that Customer 8 received gross receipts totaling $15,971 through her housekeeping business, more than twice what Customer 8 estimates she actually received. Customer 8 did not tell the preparer that she earned $15,971 and does not know why the preparer reported this amount. The preparer did not review the completed tax return with Customer 8. By falsely claiming this amount of income, the Simple Solutions preparer improperly claimed the maximum Earned Income Tax

Credit in the amount of $6,318, and claimed a bogus refund of $5,837.  The preparer did not provide Customer 8 with a copy of the completed tax return.

### Customer 9

50.     Customer 9 of Palatka, Florida had his 2017 federal income tax return prepared at the Simple Solutions store in Palatka.  Customer 9 was employed as a machine operator at a paper mill in 2017.  Customer 9 does not own or operate a business.  When his tax return was prepared, the preparer asked Customer 9 questions about his personal vehicle expenses and how far he travels to and from his job.

51.     On the Schedule C attached to the tax return, the preparer falsely reported that Customer 9 owned a business, not identified by type of business, through which Customer 9 purportedly had no sales and received no gross receipts, but incurred vehicle expenses totaling $26,013, for purportedly driving 48,623 business miles.  Customer 9 did not incur the reported expenses, did not provide this amount to the preparer, and did not know that the preparer reported this information related to a non-existent business on his tax return.  Customer 9 is not familiar with the address of the purported business listed on the Schedule C.  By reporting a phony $26,013 business loss, the Simple Solutions preparer falsely claimed the Earned Income Tax Credit in the amount of $3,251 and claimed a bogus refund of $4,812 on Customer 9's 2017 tax return.

### Customer 10

52.     Customer 10 of Palatka, Florida had his 2017 federal income tax return prepared at the Simple Solutions store in Palatka.  Customer 10 was employed at a restaurant in 2017. Customer 10 does not own or operate a business, and never discussed owning a business with the

preparer.  Customer 10 was not present when his tax return was prepared, as he dropped his

Form W-2 off at the store, and returned later to sign the completed tax return.

53.     On the Schedule C attached to the tax return, the preparer falsely reported that

Customer 10 owned a business, not identified by name or type of business, through which

Customer 10 purportedly had no sales and received no gross receipts, but incurred vehicle

expenses totaling $11,582, for purportedly driving 21,649 business miles.  Customer 10 did not

incur the reported expenses, did not provide this amount to the preparer, and did not know that

the preparer reported this information related to a non-existent business on his tax return.  By

reporting a phony $11,582 business loss, the Simple Solutions preparer falsely claimed the

Earned Income Tax Credit in the amount of $1,948.  The preparer also claimed false deductions

on the Schedule A attached to the tax return, discussed in paragraph 92, *infra*, and thereby

claimed a bogus refund of $5,563 on Customer 10's 2017 tax return.

**Customer 11**

54.     Customer 11 of Palatka, Florida had his 2017 federal income tax return prepared

at the Simple Solutions store in Palatka.  Customer 11 was employed at a sheet rock

manufacturing company in 2017.  Customer 11 does not own or operate a business.  Customer 11

initially provided the preparer with a copy of his last paystub, along with his ID and social

security cards for himself and his children.  Customer 11 subsequently had to return to the store

with a copy of his Form W-2. When his tax return was prepared, the preparer asked Customer 11

questions about how far he travels to and from his job and if he had any expenses for uniforms.

Customer 11 told the preparer that he drove 30 miles round trip to his job and that his company

provided uniforms.

55.     On the Schedule C attached to the tax return, the preparer falsely reported that Customer 11 owned a "textile" business, through which Customer 11 purportedly had no sales and received no gross receipts, but incurred vehicle expenses totaling $24,075 (for purportedly driving 45,000 business miles) and supply expenses in the amount of $16,000.  Customer 11 did not incur the reported expenses, did not provide these amounts to the preparer, and did not know that the preparer reported this information related to a non-existent business on his tax return. The preparer also falsely overstated on the tax return the amount of Customer 11's wages and the amount of the taxes withheld from Customer 11's wages. By reporting a phony $40,075 business loss, the Simple Solutions preparer falsely claimed the Earned Income Tax Credit in the amount of $4,619 and claimed a bogus refund of $9,587 on Customer 11's 2017 tax return.

### Customer 12

56.     Customer 12 of Daytona Beach, Florida had her 2017 federal income tax return prepared at the Simple Solutions store in Daytona Beach.  Customer 12 was employed as a certified nursing assistant in 2017.  Customer 12 does not own or operate a business and did not discuss owning a business with the preparer.

57.     On the Schedule C attached to the tax return, the preparer falsely reported that Customer 12 owned a "pravite [sic] caregiving" business, through which Customer 12 had no sales and received no gross receipts, but incurred expenses totaling $7,333, including $1,017 for car and truck expenses (for purportedly driving 1,900 business miles), $4,560 for supplies, $1,500 for towels, and $256 for gloves.  Customer 12 did not incur these reported expenses, did not provide these amounts to the preparer, and did not know that the preparer reported this information related to a non-existent business on her tax return. By reporting a phony $7,333 business loss, the Simple Solutions preparer claimed a fabricated Earned Income Tax Credit in

the amount of $5,837. The preparer also claimed fabricated expenses on the Schedule A attached to the tax return, discussed in paragraph 93, *infra*, and thereby claimed a bogus refund of $8,502 on Customer 12's 2017 tax return. The preparer did not review the completed tax return with Customer 12.

**Customer 13**

58.     Customer 13 of De Leon Springs, Florida had his 2017 federal income tax return prepared at the Simple Solutions store in Daytona Beach. Customer 13 was employed as a carpenter and at a pest control company in 2017.

59.     Customer 13 was married in 2017, although his tax return falsely reports his filing status as "single." Customer 13 believed that the preparer had prepared a joint tax return for him and his wife. Simple Solutions prepared a separate 2017 tax return for Customer 13's wife, on which the preparer falsely claimed "head of household" filing status, despite knowing that Customer 13 and his wife are married.

60.     Customer 13 did not go to the store to have his tax return prepared, but simply faxed copies of his ID, social security card, and Form W-2 to the store. Customer 13 did not speak to the preparer when his tax return was prepared. Customer 13's wife went to the store to sign the completed tax return on his behalf.

61.     Customer 13 does not own or operate a business. On the Schedule C attached to the tax return, the preparer falsely reported that Customer 13 owned a "lawn care pest contr" business, through which Customer 13 purportedly had no sales and received no gross receipts, but incurred vehicle expenses totaling $19,069 (for purportedly driving 28,123 business miles), supply expenses in the amount of $4,260, and a cell phone expense in the amount of $2,250. Customer 13 did not incur the reported expenses, did not provide these amounts to the preparer,

and did not know that the preparer reported this information related to a non-existent business on his tax return. By reporting a phony $25,579 business loss, the Simple Solutions preparer falsely claimed the Earned Income Tax Credit in the amount of $228. The preparer also claimed fabricated expenses on the Schedule A attached to the tax return and reported fabricated tax withholdings, discussed in paragraphs 94-95 and 110, *infra*, and thereby claimed a bogus refund of $2,284 on Customer 13's 2017 tax return. The preparer did not provide a copy of the completed tax return to Customer 13.

**Intentionally Claiming an Improper Filing Status and Bogus Dependents**

62. The Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at their direction and with their knowledge and consent, prepare tax returns reporting false filing status. Specifically, Head of Household filing status is claimed on customers' tax returns to increase the amount of the customers' standard deduction, even though the Defendants (and managers and preparers of Nurse and Simple Solutions FL, LLC) are aware that the customer does not qualify for Head of Household filing status.

63. The Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at their direction and with their knowledge and consent, file separate returns for married couples who are not living apart, improperly using the "head-of-household" or "single" filing status, both of which are unavailable to married couples living together. Often, this is an attempt to increase the claimed EITC; a qualifying couple with at least two children who, together, might otherwise receive a single EITC refund of $5,000 by properly claiming "married, filing jointly," may instead each receive a refund of $3,000 or more, by both falsely claiming Head of Household or single status and each claiming at least one dependent.

64.     Additionally, the Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at their direction and with their knowledge and consent, claim dependents who do not actually qualify as dependents on customers' tax returns, and then claim Head of Household filing status to increase the customers' refunds through both the false filing status and fraudulent EITC claim based on the bogus dependents.

### Bogus Schedule A Deductions

65.     The Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at their direction and with their knowledge and consent, prepare tax returns reporting bogus itemized deductions on Form Schedule A, "Itemized Deductions," to improperly or fraudulently reduce customers' taxable income. For example, the Defendants report non-deductible personal expenses, and fabricate (or falsely inflate) charitable contributions, medical expenses, tax return preparation fees, unreimbursed employee business expenses, and other job-related or miscellaneous deductions, and purportedly paid by their customers.

66.     The Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at their direction and with their knowledge and consent, also prepare tax returns for customers which include Forms Schedule A making false claims for purported unreimbursed employee business expenses.  Section 162 of the Internal Revenue Code governs trade or business expenses.  The Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at their direction and with their knowledge and consent, often claim deductions for fabricated, fraudulently inflated, and/or non-qualifying business expenses, particularly for purported business miles driven by customers.

### Customer 14

67.     For example, Edwards prepared the 2017 federal income tax return of Customer 14 of Daytona Beach, Florida at the Simple Solutions store in Daytona Beach.  Customer 14 was employed in 2017 by the State of Florida as a public defender. Because he is employed by the state, most of his job-related expenses are reimbursed.  Customer 14 and his wife, who generally file separate tax returns, went to the store together to have their tax returns prepared.

68.     Customer 14 received wages totaling $41,950.  On the Schedule A attached to the tax return, Edwards falsely reported that Customer 14 incurred $18,962 (over 45% of Customer 14's wages) in unreimbursed employee business expenses purportedly related to Customer 14's job as a public defender.  These phony expenses included $3,890 for clothing, $1,920 for a cell phone, $1,096 for "brief cases for court," and $500 for office furniture. Edwards falsely reported that Customer 14 incurred expenses for "car repairs and tune ups" in the amount of $2,600 and tires in the amount of $1,200, identifying these expenses as an "other" job expense or miscellaneous deduction. Edwards also falsely claimed that Customer 14 made $4,566 in cash charitable contributions.  Edwards reported a total of $31,311 in phony expenses on the Schedule A, thereby claiming a bogus refund in the amount of $3,672.

69.     Edwards did not review the completed tax return with Customer 14 and did not tell him the amount of the fee he would be charged to have it prepared.  Edwards did not initially provide Customer 14 with a copy of the completed tax return.  Customer 14 subsequently learned from a transcript that he requested from the IRS (because he could not get a copy of the return from the preparer) that amounts reported on his tax return were incorrect.  Customer 14 returned to the Simple Solutions office and requested that an amended return be filed to correct the mistakes.  Customer 14 was told an amended return would be filed, but Nurse subsequently

emailed him a copy of his original tax return, rather than an amended return.  According to IRS records, Simple Solutions did not file an amended 2017 tax return for Customer 14.

### Customers 15 and 16

70.     Leon prepared the 2017 federal income tax return of Customers 15 and 16 of Palm Coast, Florida, at the Simple Solutions store in Bunnell, Florida. In 2017, Customers 15 and 16 each worked two jobs (Customer 15 as a laboratory materials handler and Customer 16 as a retail sales associate) through which they received wages totaling $45,366.  Customers 15 and 16 provided Leon with copies of their IDs, social security cards, and Forms W-2.  Leon asked Customers 15 and 16 whether they paid for oil changes, car tires, a cell phone bill, car insurance, and car payments.  Customer 15 had some clothing expenses related to his job, but Customers 15 and 16 did not incur any other job-related expenses.

71.     On the Schedule A attached to the tax return, Leon falsely reported that Customers 15 and 16 incurred $15,600 (over 34% of their wages) in unreimbursed employee business expenses purportedly related to their jobs.  The fabricated job-related expenses included $2,640 for cell phones, $3,400 for car insurance, $560 for car maintenance, and $4,500 for car notes, all non-deductible personal expenses, and all in inflated amounts that Customers 15 and 16 did not provide to Leon.  Leon also falsely reported that Customers 15 and 16 incurred an expense for tax return preparation fees in the amount of $19,850, an absurdly high amount that Customers 15 and 16 did not provide to Leon.  Leon reported a total of $35,284 in phony expenses on the Schedule A, and claimed a bogus refund in the amount of $3,845 on the 2017 tax returns of Customers 15 and 16.  Leon did not provide a copy of the completed tax return, but instead provided Customers 15 and 16 with a link where they could download a copy after leaving the store.

**Customer 17**

72.     Leon prepared the 2017 federal income tax return of Customer 17 of Bunnell, Florida, at the Simple Solutions store in Bunnell.  In 2017, Customer 17 received wages totaling $39,284.  Customer 17 provided Leon with a copy of his Form W-2.  Customer 17 asked Leon whether Customer 17 needed to provide any receipts, and Leon responded that no receipts were necessary up to a certain point. Customer 17 did not provide any other information because although the store changed names, it had all of his information from when he had his tax returns prepared by the "same people" in prior years. (UJM Tax Services, where Leon previously worked, was banned from transferring any such customer information to any other individual or entity.)

73.     Customer 17 receives uniforms from his employer.  Leon asked Customer 17 about his expenses for his work boots, everyday shirts and jeans, rent, oil changes, insurance, and cell phone.  Leon also asked Customer 17 how far he commuted to and from work (another non-deductible expense).  On the Schedule A attached to the tax return, Leon falsely reported that Customer 17 incurred $15,064 (over 37% of Customer 17's wages) in unreimbursed employee business expenses purportedly related to Customer 17's job.  The fabricated job-related expenses included $720 for a cell phone, $754 for insurance, $2,100 for "oil change and tires," and $500 for uniforms.  Leon reported an expense for rent in the amount of $9,600, identifying it as an "other" job expense or miscellaneous deduction. Leon also falsely reported that Customer 17 incurred an expense for tax return preparation fees in the amount of $9,875, an absurdly high amount that Customer 17 did not provide to Leon.  Leon reported a total of $34,362 in phony expenses on the Schedule A, thereby falsely reducing Customer 17's taxable income to $872, and claimed a bogus refund in the amount of $4,470. Leon did not review the tax return with, nor

provide a copy of the completed tax return to, Customer 17. Rather, Leon provided Customer 17

with an email link through which Customer 17 could later download a copy of the return.

**Customer 18**

74.    Leon prepared the 2017 federal income tax return of Customer 18 of Palm Coast,

Florida, at the Simple Solutions store in Bunnell.  In 2017, Customer 18 received wages totaling

$41,355 as a manufacturing fabricator.  All of Customer 18's job-related expenses are covered

by his employer, and Customer 18 did not tell Leon that he incurred any expenses related to his

job.  Leon asked Customer 18 how far he commuted to and from work (a non-deductible

expense). Customer 18 provided Leon with copies of his Form W-2 and Form 1099 for his

mortgage and real estate taxes (which were not reported on the 2017 tax return).

75.    On the Schedule A attached to the tax return, Leon falsely reported that Customer

18 incurred $17,325 (over 41% of Customer 18's wages) in unreimbursed employee business

expenses purportedly related to Customer 18's job.  The fabricated job-related expenses included

$1,200 for a cell phone, $1,200 for car insurance, and $1,500 for uniforms.  Leon reported

expenses for boots in the amount of $950 and utilities in the amount of $3,895, identified as

"other" job expenses or miscellaneous deductions. Leon also falsely reported that Customer 18

incurred an expense for tax return preparation fees in the amount of $10,500, an absurdly high

amount that Customer 18 did not provide to Leon.  Leon reported a total of $32,535 in phony

expenses on the Schedule A, and claimed a bogus refund in the amount of $4,974.

**Customer 19**

76.    Leon prepared the 2017 federal income tax return of Customer 19 of Palm Coast,

Florida, at the Simple Solutions store in Bunnell.  Customer 19 went to this store location after

seeing a sign at the store location where he had his prior tax return prepared indicating that the store moved to the new location in Bunnell.

77.     In 2017, Customer 19 received wages totaling $33,567 working as a stocker at Publix. Customer 19 did not incur any job-related expenses. Leon asked Customer 19 how far he commuted to and from work (a non-deductible expense). On the Schedule A attached to the tax return, Leon falsely reported that Customer 19 incurred $11,680 (over 34% of Customer 19's wages) in unreimbursed employee business expenses purportedly related to Customer 19's job. The fabricated job-related expenses included $1,800 for a cell phone, $4,800 for car maintenance, $3,580 for utilities, and $1,500 for uniforms. Leon also falsely reported that Customer 19 incurred an expense for tax return preparation fees in the amount of $17,500, an absurdly high amount that Customer 19 did not provide to Leon. Leon reported a total of $29,118 in phony expenses on the Schedule A, and claimed a bogus refund in the amount of $4,304.

78.     Customer 19 was told that he would receive a copy of his completed tax return by email, but never received it. Customer 19 had to return to the store to pick up a tax refund check. Simple Solutions charged Customer 19 $50 to get his refund, on top of Simple Solutions' fees that were taken from the original refund amount that the IRS issued.

**Customer 20**

79.     Leon is identified as the preparer of the 2017 federal income tax return of Customer 20 of Daytona Beach, Florida, prepared at the Simple Solutions store in Bunnell. In 2017, Customer 20 received wages totaling $42,755 working for Volusia County. At most, Customer 20 incurred $250 in expenses related to his job. The preparer asked Customer 20 about his personal expenses, including his cell phone bill. Customer 20 provided the preparer with copies of his Form W-2.

27

80.     On the Schedule A attached to the tax return, the preparer falsely reported that Customer 20 incurred $9,720 in unreimbursed employee business expenses purportedly related to Customer 20's job.  The fabricated job-related expenses included $1,200 for a cell phone, $4,320 for car insurance, $3,000 for utilities, and $1,200 for uniforms.  The preparer also reported personal home expenses for "AC unit replacement" in the amount of $4,000 and "hotwater unit" in the amount of $500, identified as "other" job expenses or miscellaneous deductions.  The preparer also falsely reported that Customer 20 incurred an expense for tax return preparation fees in the amount of $16,520, an absurdly high amount that Customer 20 did not provide to the preparer.  The preparer reported a total of $36,009 in expenses on the Schedule A, and claimed a bogus refund in the amount of $4,172.

**Customer 21**

81.     Leon prepared the 2017 federal income tax return of Customer 21 of Palm Coast, Florida, at the Simple Solutions store in Bunnell.  In 2017, Customer 21 received wages totaling $31,086 as a machine operator at a parts manufacturer.  All of Customer 21's job-related expenses are covered by his employer, and Customer 21 did not tell Leon that he incurred any expenses related to his job.

82.     On the Schedule A attached to the tax return, Leon falsely reported that Customer 21 incurred $13,056 (over 41% of Customer 21's wages) in unreimbursed employee business expenses purportedly related to Customer 21's job.  The fabricated job-related expenses included $480 for cell phones, $1,500 for car insurance, $6,756 for car notes, and $70 for oil changes. Leon reported expenses for utilities in the amount of $2,460, identified as an "other" job expense or miscellaneous deduction. Leon also falsely reported that Customer 21 incurred an expense for tax return preparation fees in the amount of $11,100, an absurdly high amount that Customer 21

did not provide to Leon.  Leon reported a total of $26,603 in phony expenses on the Schedule A,
falsely reducing Customer 21's reported taxable income to $449, and claimed a bogus refund in
the amount of $4,974.

**Customer 22**

83.     Leon prepared the 2017 federal income tax return of Customer 22 of Palm Coast,
Florida, at the Simple Solutions store in Bunnell.  Customer 22 was married, and informed Leon
that he was married.  On the tax return, Leon reported Customer 22's filing status as "single."
Customer 22 provided Leon with copies of his Form W-2, Form 1099 showing the mortgage
interest that he paid, Form 1099 showing dividends he received, and Form 1098 education
expense information.

84.     In 2017, Customer 22 received wages totaling $34,952 working at Home Depot
and as a high school sports coach.  Customer 22 did not incur any expenses working at Home
Depot, and incurred around $200 in expenses related to his coaching work, with all
transportation covered by the school. When preparing the return, Leon asked Customer 22 about
personal expenses such as phone bills, cable bills, oil changes, and car tires.

85.     On the Schedule A attached to the tax return, Leon falsely reported that Customer
22 incurred $15,019 (over 42% of Customer 22's wages) in unreimbursed employee business
expenses purportedly related to Customer 22's jobs.  The fabricated job-related expenses
included $1,098 for cell phones, $720 for car insurance, $2,616 for utilities, and $850 for tires.
Leon reported expenses for oil changes in the amount of $350, identified as an "other" job
expense or miscellaneous deduction.  Although the Form 1099 that Customer 22 provided Leon
showed that he paid $4,411 in mortgage insurance, Leon falsely reported that Customer 22
actually paid mortgage interest in the amount of $9,885. Leon also falsely reported that Customer

22 incurred an expense for tax return preparation fees in the amount of $5,150, an absurdly high amount that Customer 22 did not provide to Leon.  Leon reported a total of $19,817 in expenses on the Schedule A, falsely reducing Customer 22's reported taxable income to $725, and claimed a bogus refund in the amount of $2,709.

**Customer 1 (con't)**

86.     Leon prepared Customer 1's 2016 federal income tax return.  In 2016, Customer 1 received wages totaling $42,445.  On the Schedule A attached to Customer 1's 2016 tax return, Leon falsely reported that Customer 1 incurred $29,850 (over 70% of Customer 1's wages) in unreimbursed employee business expenses purportedly related to Customer 1's job.  The fabricated job-related expenses included $5,450 for overnight travel expenses, $2,400 for a cell phone, $13,500 for rent, $3,650 for car insurance, and $4,850 for utilities. Leon asked Customer 1 whether he purchased a car, and Customer 1 replied that he had not.  Despite this, Leon falsely reported that Customer 1 incurred expenses for "Car Notes" (what would be a personal expense) in the amount of $6,500, identifying it as an "other" job expense or miscellaneous deduction. Leon reported a total of $36,251 in phony expenses on the Schedule A, thereby falsely reducing Customer 1's taxable income to $1,506, and claimed a bogus refund in the amount of $5,753.

**Customer 2 (con't)**

87.     Leon prepared Customer 2's 2016 federal income tax return.  In 2016, Customer 2 received wages totaling $58,212.  On the Schedule A attached to Customer 2's 2016 tax return, Leon falsely reported that Customer 2 incurred $33,710 (over 57% of Customer 2's wages) in unreimbursed employee business expenses purportedly related to Customer 2's job.  The fabricated job-related expenses included $17,500 for rent, $1,200 for a cell phone, $1,920 for car insurance, and $3,120 for utilities. Leon falsely reported that Customer 2 incurred expenses for

"Car Notes" in the amount of $4,500, identifying it as an "other" job expense or miscellaneous deduction. As noted above, Leon asked Customer 2 about her personal expenses, such as insurance, car payments, and household bills, but did not explain why.  Leon reported a total of $38,822 in phony expenses on the Schedule A, and thereby claimed a bogus refund in the amount of $6,279.

### Customers 3 and 4 (con't)

88.    Leon prepared the 2016 and 2017 federal income tax returns of Customers 3 and 4.  In 2016, Customers 3 and 4 received wages totaling $53,658.  On the Schedule A attached to the tax return, Leon falsely reported that Customers 3 and 4 incurred $36,195 (over 67% of their wages) in unreimbursed employee business expenses purportedly related to their jobs.  The fabricated job-related expenses included $15,850 for rent, $960 for cell phones, $4,400 for car insurance, and $5,000 for utilities. Leon falsely reported that Customers 3 and 4 incurred expenses for uniforms in the amount of $950, "oil change" in the amount of $350, and "tires car repair" in the amount of $6,420, identifying these expenses as "other" job expenses or miscellaneous deductions. Other than the rent expense for their home (a non-deductible personal expense), Customers 3 and 4 did not incur these expenses and did not provide these amounts to Leon. Leon reported a total of $44,618 in phony expenses on the Schedule A, thereby falsely reducing the reported taxable income to $942, and claimed a bogus refund in the amount of $4,335.

89.    In 2017, Customers 3 and 4 received wages totaling $42,516.  On the Schedule A attached to the tax return, Leon falsely reported that Customers 3 and 4 incurred $11,750 in unreimbursed employee business expenses purportedly related to their jobs.  The fabricated job-related expenses included $1,200 for cell phones, $4,500 for utilities, $4,850 for car insurance,

and $1,200 for uniforms. Leon falsely reported that Customers 3 and 4 incurred expenses for "oil change" in the amount of $980 and "tires" in the amount of $1,250, identifying these expenses as "other" job expenses or miscellaneous deductions. Leon also falsely reported that Customers 3 and 4 incurred an expense for tax return preparation fees in the amount of $19,850, an absurdly high amount that Customers 3 and 4 did not provide to Leon. Customers 3 and 4 did not incur these expenses and did not provide these amounts to Leon. Leon reported a total of $33,733 in phony expenses on the Schedule A, thereby falsely reducing the reported taxable income to $683, and claimed a bogus refund in the amount of $1,050.

### Customers 5 and 6 (con't)

90.     Edwards prepared the 2017 federal income tax return of Customers 5 and 6. In 2017, Customers 5 and 6 received wages totaling $48,569. On the Schedule A attached to the tax return, Edwards falsely reported that Customers 5 and 6 incurred $19,153 (over 39% of their wages) in unreimbursed employee business expenses purportedly related to their jobs. Customers 5 and 6 did not pay any out-of-pocket expenses related to their employment. Edwards asked them about clothing expenses and cell phone expenses, but Customers 5 and 6 did not tell Edwards that they incurred any such expenses for their jobs. Edwards falsely reported that Customers 5 and 6 incurred job-related expenses for cell phones ($2,568), clothing ($3,680), tires ($500) and oil changes ($350). Edwards also asked Customers 5 and 6 how far they lived from their jobs. Edwards falsely reported that Customer 6 drove 22,532 miles while working doing accounts payable for her job. Although Customer 6 commuted to and from her job, she did not drive her personal vehicle or otherwise travel while working, and did not tell Edwards that she drove 22,532 while working. Edwards also falsely reported that Customers 5 and 6 incurred expenses for "repairs and maintenance" in the amount of $2,335 and "travel

32

expenses" in the amount of $875, identifying these expenses as "other" job expenses or miscellaneous deductions.

91.     Customers 5 and 6 contributed around $500 to charity in 2017.  However, Edwards falsely reported that Customers 5 and 6 contributed $5,775 to charity.  Customers 5 and 6 did not incur any of these reported expenses and did not provide these amounts to Edwards. By falsely reporting these expenses on the Schedule A, along with the bogus business loss on the Schedule C, discussed in paragraph 45, *supra*, Edwards claimed a bogus refund in the amount of $6,138. Edwards did not provide a copy of the completed tax return Customers 5 and 6. Customers 5 and 6 paid over $620 to have the tax return prepared.

**Customer 10 (con't)**

92.     Customer 10's 2017 federal income tax return was prepared at the Simple Solutions store in Palatka.  In 2017, Customer 10 received wages totaling $39,028 from a BBQ restaurant.  On the Schedule A attached to Customer 10's 2017 tax return, the preparer falsely reported that Customer 10 incurred $18,172 (over 46% of Customer 10's wages) in unreimbursed employee business expenses purportedly related to Customer 10's job.  The fabricated job-related expenses included $1,440 for a cell phone, $620 for tires, $698 for brakes, and $1,211 for uniforms. The preparer also falsely claimed that Customer 10 donated $1,985 to charity by cash or check. Customer 10 did not incur these expenses, did not discuss any of these expenses with the preparer, and did not know that these expenses were reported on his tax return. As a result of these false expenses and the fabricated Schedule C loss and EITC claimed on the tax return, discussed in paragraph 53, *supra*, the preparer claimed a bogus refund of $5,563 on Customer 10's 2017 tax return.  The preparer only provided Customer 10 with the first two pages of the Form 1040, which did not include the fabricated Schedules A and C.

**Customer 12 (con't)**

93.     Customer 12's 2017 federal income tax return was prepared at the Simple

Solutions store in Daytona Beach.  In 2017, Customer 12 received wages totaling $27,946 as a

certified nursing assistant.  Customer 12 may incur as much as $800 in expenses annually for her

job, primarily for uniforms and shoes.  On the Schedule A attached to Customer 12's 2017 tax

return, the preparer falsely reported that Customer 12 incurred $4,830 in unreimbursed employee

business expenses purportedly related to Customer 12's job.  The fabricated job-related expenses

included $1,440 for a cell phone, $2,236 for uniforms, $689 for "tune ups and oil changes," and

$465 for shoes.  The preparer also falsely reported that Customer 12 incurred expenses for

"repairs" in the amount of $2,060 and tires in the amount of $856, identifying these expenses as

"other" job expenses or miscellaneous deductions.  The preparer also falsely claimed that

Customer 12 donated $9,350 to charity by cash or check. Customer 12 did not incur these

expenses, did not discuss any of these expenses with the preparer, and did not know that these

expenses were reported on her tax return.  As a result of these false expenses and the fabricated

Schedule C loss and EITC claimed on the tax return, discussed in paragraph 57, *supra*, the

preparer claimed a bogus refund of $8,502 on Customer 12's 2017 tax return.

**Customer 13 (con't)**

94.     Customer 13's 2017 federal income tax return was prepared at the Simple

Solutions store in Daytona Beach.  In 2017, Customer 13 received wages totaling $37,621

working as a carpenter and doing pest control.  Customer 13 estimates that he may have spent as

much as $1,000 on expenses related to his job, but did not discuss any expenses with the

preparer.  On the Schedule A attached to Customer 13's 2017 tax return, the preparer falsely

reported that Customer 13 incurred $8,892 in unreimbursed employee business expenses

purportedly related to Customer 13's job.  The fabricated job-related expenses included $1,620

for a cell phone, $3,802 for dry cleaning, and $3,560 for uniforms. The preparer also falsely

claimed that Customer 13 donated $2,530 to charity by cash or check.  The preparer also falsely

reported that Customer 13 incurred expenses for "oil changes and tune ups" in the amount of

$5,201, identifying this as an "other" job expense or miscellaneous deduction.  Customer 13 did

not incur these expenses, did not discuss any of these expenses with the preparer, and did not

know that these expenses were reported on his tax return.

 95. The combined expenses reported on the Schedules A and C attached to Customer

13's 2017 tax return total $46,788; this exceeds Customer 13's reported income for the year by

$9,167. As a result of these false Schedule A expenses, and the fabricated tax withholdings and

Schedule C loss and EITC claimed on the tax return, discussed in paragraph 61, *supra,* and

paragraph 110, *infra*, the preparer claimed a bogus refund of $2,284 on Customer 13's 2017 tax

return.  The preparer did not provide Customer 13 with a copy of the completed tax return.

### Reporting False Tax Withholdings Far Exceeding Amounts
### Actually Withheld and Reported on Forms W-2

 96. The Defendants prepare tax returns on which they falsely report the amount of

taxes withheld from customers' income far in excess of the taxes actually withheld as reported

on Forms W-2 issued to the customers by their employers.

 97. Employers are required to compute and withhold from their employees' wages

federal income, social security, and Medicare taxes.  At the end of a tax year, the amount

withheld from an employee's wages is a fixed and certain number.  The final amount withheld is

typically reported on a Form W-2.  The Form W-2 is sent to the taxpayer from the employer and

later filed by the taxpayer or his tax preparer along with the tax return.

98.     The Defendants disregard the federal tax withholdings reported on the Form W-2 and instead report a far larger amount on the tax return.  By falsely claiming that a larger amount of tax was withheld from customers' income, the Defendants falsely claim a larger refund of taxes allegedly withheld.  Fabricating the withholding amounts reported on customers' tax returns in contravention of the amounts reported on customers' Forms W-2 provided to the Defendants constitutes outright fraud and is a serious obstruction of tax administration.

99.     In other instances, the Defendants total all of the amounts withheld from a customer's wages (federal income taxes, social security, and Medicare taxes) as reported on a Form W-2 or pay stub, and falsely report this total amount as the amount of income taxes withheld.

100.     Frequently, in connection with reporting fabricated wages and withholdings, the Defendants also falsely claim that the customer had a business through which the customer incurred expenses, resulting in a loss.  The bogus business loss that the Defendants report on the customer's tax return results in the return claiming a larger bogus refund of the phony withholdings reported on the return.

**Customer 23**

101.     For example, Nurse prepared the 2017 federal income tax return of Customer 23 of Ormond Beach, Florida at the Simple Solutions store in Daytona Beach.  Customer 23 was employed as a Certified Nursing Assistant in 2017.

102.     Nurse falsely reported on the 2017 tax return that Customer 23 received a Form 1099 reporting taxes withheld in the amount of $335, but not reporting any income.

103.     Additionally, in 2017, Customer 23 received wages totaling $34,875.  On the Schedule A attached to Customer 23's 2017 tax return, Nurse falsely reported that Customer 23

incurred $17,800 (over 51% of Customer 23's wages) in unreimbursed employee business expenses purportedly related to Customer 23's job.  The fabricated job-related expenses included $1,200 for uniforms, $850 for supplies, and $1,840 for a cell phone; the remaining purported expenses were not categorized on the filed tax return. Nurse also falsely reported that Customer 23 incurred expenses for oil changes in the amount of $225, identifying it as an "other" job expense or miscellaneous deduction. Nurse also falsely reported that Customer 23 contributed $9,000 by cash or check to charity.  Customer 23 did not incur these expenses and did not provide these amounts to Nurse.

104.    By falsely reporting the phony tax withholdings and the fabricated deductions on the Form Schedule A, Nurse claimed a bogus refund in the amount of $2,301 on Customer 23's 2017 tax return.

### **Customer 24**

105.    Nurse is identified as the preparer of the 2017 federal income tax return of Customer 24 of Daytona Beach, Florida. The return was prepared at the Simple Solutions store in Daytona Beach, and Customer 24 identified a male as the preparer of the tax return.  Customer 24 was employed at a cleaning service and a laundry service in 2017, and provided his Forms W-2 to the preparer. Customer 24 did not own or operate a business in 2017.

106.    The preparer falsely reported on the 2017 tax return that Customer 24 received a Form 1099 reporting taxes withheld in the amount of $524, but not reporting any income.

107.    On the Schedule A attached to Customer 24's 2017 tax return, the preparer falsely reported that Customer 24 contributed $6,125 by cash or check to charity, when he did not make any such contributions and did not tell the preparer that he contributed to charity.

37

108.     The preparer also falsely reported on the Schedule C attached to the 2017 tax return that Customer 24 owned a "maintenance" business through which Customer 24 received $850 in gross receipts, and purportedly incurred $22,086 in expenses, including $13,536 in car and truck expenses (for 25,301 purported business miles driven), $1,750 for repairs and maintenance, $4,550 for supplies, and $2,250 for a cell phone.  Customer 24 did not have any such business expenses and did not discuss owning a business with, or provide any of these amounts to, the preparer.

109.     By falsely reporting the phony tax withholdings, the fabricated charitable contribution deductions on the Form Schedule A, and the phony business loss of $21,236 on the Form Schedule C, the preparer claimed a bogus refund in the amount of $2,701 on Customer 24's 2017 tax return.

### Customer 13 (con't)

110.     As discussed in paragraphs and 58-61 and 94-95, *supra*, Customer 13 received wages totaling $37,621 in 2017, from which $1,656 in taxes were withheld. The preparer falsely reported on the tax return that a total of $2,056 in taxes were withheld from Customer 13's earnings in 2017, by falsely reporting that Customer 13 received a Form 1099 reporting taxes withheld in the amount of $399, but not reporting any income.  By reporting the fabricated tax withholdings, along with the bogus deductions on the Schedules A and C, and filing a separate tax return for Customer 13, the Simple Solutions preparer claimed a bogus refund of $2,284.

### Improperly Preparing and Filing Returns based on Pay Stubs

111.     The Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at their direction and with their knowledge and consent, also prepare and file federal income tax returns using customers' end-of-year pay stubs and then file their customers' tax returns without

valid Forms W-2. The returns are prepared before the end of the tax year and/or before an employer even has the ability to issue a Form W-2 for that year.

112.    Federal tax returns for wage earners must be prepared using Forms W-2. Using pay stubs to prepare and file tax returns is improper and violates IRS rules. Moreover, end-of-year pay stubs frequently omit income and distributions that are shown on employer-issued Forms W-2.  Thus, preparing and filing federal income tax returns based on information from end-of-year pay stubs inevitably results in errors and omissions on federal tax returns, which necessarily interferes with the administration and enforcement of the internal revenue laws.

113.    The Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at their direction and with their knowledge and consent, know that using pay stubs to prepare and file returns violates IRS rules and regulations because in order to participate in the IRS's electronic filing program, all electronic filers must acknowledge that they will comply with the IRS's requirements, which expressly prohibit filing returns prepared with pay stubs and without genuine Forms W-2.

114.    The Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at their direction and with their knowledge and consent, began soliciting customers in December by falsely telling customers that their returns can be prepared using their most recent pay stub.  The Defendants open stores and advertise that customers can have their tax returns prepared before the end of the tax year, before customers know how much income they earned and taxes they owe for the year, and before employers are able to issue Forms W-2 to their employees.  Forms W-2 are not available to employees before the end of the calendar tax year, and tax returns cannot be filed before January of the processing year.

115.     The Defendants know that preparing tax returns based on pay stubs violates IRS rules and regulations, and consequently interferes with the administration of the Internal Revenue laws. By preparing tax returns before the end of the tax year, the Defendants unfairly solicit business before competitors.

### Unconscionable and Undisclosed Fees

116.     The Defendants charge unconscionably high fees to prepare tax returns, mostly through added, fees which are typically charged without customers' knowledge.  The Defendants charge hundreds of dollars to prepare and file fraudulent tax returns with unnecessary and bogus forms and schedules attached, when they should have honestly prepared a basic Form 1040 tax return.

117.     The Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at their direction and with their knowledge and consent, intentionally deceive customers regarding the fees charged for the preparation of tax returns.

118.     The Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at their direction and with their knowledge and consent, charge additional fees for each form and schedule (such as a Schedule C or Schedule A) attached to the Form 1040 tax return.  These fees result in a total tax return preparation fee much higher than the amount advertised.

119.     The high fees charged (and the fee structure, which encourages the addition of unnecessary and often improper forms and schedules to the Form 1040) are a strong incentive for the Defendants and employees to prepare and file fraudulent returns claiming excessive refunds based on bogus claims and associated forms and schedules.  Employees who charge higher fees and generate more revenue are more likely to be promoted and have the opportunity to manage or own their own stores.

120. Because the Defendants target low-income individuals, the high fees frequently can pose a significant financial hardship for customers. Customers may be required to pay back the improper refunds that they receive due to the Defendants' grossly incompetent, negligent, reckless, and/or fraudulent tax return preparation. Because the Defendants deduct their high fees directly from their customers' refunds, customers required to return these improper refunds to the government must also return the portion subtracted as fees. Thus, customers are then out-of-pocket the high fees charged by the Defendants. Additionally, fees are unconscionable for the basic – albeit fraudulent – tax returns being prepared for these customers, who are often eligible for free tax return preparation and electronic filing elsewhere.

121. The Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at their direction and with their knowledge and consent, also routinely and intentionally fail to disclose to customers all fees charged. The Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at their direction and with their knowledge and consent, present forms to customers to sign, including a form acknowledging the fees charged, without allowing the customer to closely review or understand the forms they are signing. Alternatively, the Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at their direction and with their knowledge and consent, tell customers one amount for fees and then later increase the fees without the customers' knowledge or consent. Customers are often surprised to learn that the refund requested on their return is hundreds if not thousands of dollars more than the refund amount that they received after the fees were deducted.

122. The Defendants' fees are not paid by customers at the time of the preparation of their tax returns, but instead are subtracted from the customers' tax refund. By doing so, the Defendants are able to conceal from unsuspecting customers the actual amount that the

customers pay to have their tax return prepared. Customers typically do not discover that the fees

charged are much more than the customers anticipated for the preparation of their tax return until

the customers receive a refund that is much less than quoted by the tax return preparer, after the

Defendants have subtracted their high fees.

123.    The Defendants' practice of charging unconscionable and undisclosed fees

interferes with the administration and enforcement of the Internal Revenue laws. Such predatory

behavior erodes consumer confidence in tax return preparers and dissuades taxpayers from

seeking professional assistance with the preparation of their federal tax returns.

**Failure to Provide Customers with Copies of their Completed Tax Returns
in Violation of 26 U.S.C. § 6701(a)**

124.    The Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at

their direction and with their knowledge and consent, fail to provide customers with copies of

their completed tax returns.  The completed tax return, filed with the IRS, shows the refund that

the Defendants are claiming for the customer.  By giving a copy of the tax return to the customer,

the customer is able to determine the amount of fees that the Defendants charged by subtracting

the amount of the refund that the customer actually receives from the amount of the refund

claimed on the tax return.  The Defendants' failure to provide a copy of a customer's completed

tax return is part of the strategy to conceal the actual fees from their customers.  As discussed

above, Customers 5 and 6, 8, 13, 14, and 19 did not receive copies of their completed tax returns,

Customer 10 received only the first two pages of the Form 1040, and Customers 15, 16, and 17

received an electronic link through which (they were told) they could download a copy later.

125.    Failing to provide a customer with a copy of the completed tax return violates 26

U.S.C. § 6107(a), which requires that a tax return preparer "shall furnish a completed copy of [a

tax return or claim for refund] to the taxpayer not later than the time such return or claim is

presented for such taxpayer's signature."

126.    Customers who do receive a copy of the tax return often receive only the first two

pages of the Form 1040, but not the other forms filed with the return, such as Forms Schedule C,

Forms Schedule A, and Forms 2106, "Employee Business Expenses."  This is because the

Defendants, and employees of Nurse and Simple Solutions FL, LLC acting at their direction and

with their knowledge and consent, make fraudulent claims on these forms and, to conceal the

fraud from customers, do not provide them with copies of these completed forms.

### Failure to Identify the Actual Preparer of Customers' Tax Returns in Violation of 26 U.S.C. §§ 6695(b) and 6695(c)

127.    The Defendants prepared tax returns for customers on which they did not identify

themselves as the paid preparer, or are incorrectly identified as the paid preparer.  For example,

Customer 24, discussed above, identified a male as the preparer of his 2017 tax return, but the

return identifies Nurse as the preparer.  Among the tax returns filed in support of the

government's motion for a preliminary injunction in the case *United States v. Yves Demesmin, et

al.*, Case No. 6:17-cv-36 (M.D. Fla.), Nurse is identified as the paid preparer of the 2015 federal

income tax return of Jennifer Gill; 2015 federal income tax return of Helen Waller; 2015 federal

income tax return of Ernest Wilson III; 2013 federal income tax return of Anntonia Garvin; 2015

federal income tax return of Lynneth Ottey; 2015 federal income tax return of Ashley Ritchie;

2015 federal income tax return of Andrea Easterling; and the 2015 federal income tax return of

Shawn Green. All of these customers identified someone other than Nurse as the actual preparer.

128.    A tax return preparer who fails to sign a tax return that he or she preparers

violates 26 U.S.C. § 6695(b).  A tax return preparer, or employer of a tax return preparer, who

fails to report an identifying number of the tax return preparer or the employer on a tax return

that the preparer or an employee prepares, violates 26 U.S.C. § 6695(c).

129.    Failing to identify themselves as the paid preparers on tax returns is part of the

Defendants' attempts to conceal their tax return preparation activities from government

investigators.

**Harm Caused by the Defendants**

130.    The Defendants' preparation of false and fraudulent tax returns at their tax return

preparation stores, false and misleading statements directed to customers and potential

customers, and culture favoring volume and ill-gotten profits over accuracy and integrity have

harmed the public and the United States Treasury. These practices harm the public because the

Defendants and many of their preparers prepare false or fraudulent tax returns that understate

their customers' correct income tax liabilities and illegally cause customers to incorrectly report

their federal tax liabilities and underpay their taxes.

131.    Defendants' conduct (and that of preparers acting at the direction of Nurse and

Simple Solutions FL, LLC or with their knowledge and consent) harms the United States

Treasury by causing lost tax revenue.

132.    The Defendants' customers have also been harmed because they relied on the

Defendants and their tax preparation stores to prepare proper tax returns. Instead, customers' tax

returns substantially understated their correct tax liabilities after paying unconscionably high fees

to have their tax returns prepared. As a result, many customers, who are often low-income

taxpayers, now face large income tax debts and may be liable for penalties and interest.

133.    Customers are harmed by the unconscionably high and frequently undisclosed

fees tied to anticipated tax refunds. These fees are subtracted from the erroneous refunds that

result from the false or fraudulent tax return preparation perpetrated by the Defendants, and employees acting at the direction of Nurse and Simple Solutions FL, LLC or with their knowledge and consent. When the IRS conducts audits or examinations of customers and seeks repayment of these erroneous refunds, the customers are liable for the repayment of those refunds. Not only do customers face the hardship associated with repayment of erroneous refunds resulting from the Defendants' greed at others' expense, but customers may also have to repay the portion of the refund that the Defendants subtracted in fees. Customers may also have to pay additional fees to other tax return preparers to file amended tax returns to correct the false or fraudulent tax returns prepared and filed by the Defendants, and employees acting at the direction of Nurse and Simple Solutions FL, LLC or with their knowledge and consent.

134.    The Defendants' misconduct further harms the United States and the public by requiring the IRS to devote some of its resources to detecting her false claims on tax returns and assessing and collecting lost tax revenues from the Defendants' customers.  Consequently, identifying and recovering all lost tax revenues resulting from the Defendants' activities may be impossible.

135.    The Defendants' misconduct also harms the United States and the public because the Defendants train other tax preparers, who have no previous tax return preparation experience, on how to prepare tax returns that make false or fraudulent claims.  These Defendant-trained tax preparers, in turn, often open their own tax preparation stores using the Defendants' investments of the ill-gotten gains that the Defendants received for the preparation of tax returns, or using the income that the preparers received from the Defendants for the preparation of tax returns making false or fraudulent claims.  In this manner, the preparation of false or fraudulent tax returns spreads like a wildfire.

136.    The Defendants' conduct also causes intangible harm to honest tax return preparers who unfairly lose business to the Defendants due to their willingness to break the law. Customers often have their returns prepared at the Defendants' tax preparation stores because they promise the maximum refund, and deliver by fabricating claims and deductions on customers' tax returns.

137.    Finally, the Defendants' misconduct harms the public at large by undermining public confidence in the federal tax system and encouraging widespread violations of the internal revenue laws.

138.    The harm to the government and the public will continue, and likely increase, unless the Defendants are enjoined because—given the seriousness and pervasiveness of their illegal conduct—without an injunction, the Defendants are likely to continue preparing false and fraudulent federal income tax returns for customers.  An injunction will serve the public interest because it will put a stop to the Defendants' illegal conduct and the harm that it causes the United States and its citizens.

## Count I
### Injunction under 26 U.S.C. § 7407

139.    Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a tax return preparer from engaging in conduct subject to penalty under 26 U.S.C. § 6694 or § 6695. Additionally, if the court finds that a preparer has continually or repeatedly engaged in such conduct, and the court further finds that a narrower injunction (i.e., prohibiting only that specific enumerated conduct) would not be sufficient to prevent that person's interference with the proper administration of the internal revenue laws, the court may enjoin the person from

further acting as a tax return preparer. The prohibited conduct justifying an injunction includes, among other things, the following:

a.      Engaging in conduct subject to penalty under 26 U.S.C. § 6694(a), which penalizes a return preparer who prepares a return or claim for refund that contains an unreasonable position and the return preparer knew (or reasonably should have known) of the position;

b.      Engaging in conduct subject to penalty under 26 U.S.C. § 6694(b), which among other conduct, penalizes a return preparer who recklessly or intentionally disregards IRS rules or regulations;

c.      Engaging in conduct subject to penalty under 26 U.S.C. § 6695(g), which penalizes a return preparer who fails to comply with the statutory due diligence requirements;

d.      Guaranteeing the payment of any tax refund or the allowance of any tax credit; or

e.      Engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

140.    Section 7701(a)(36) of the Internal Revenue Code defines tax return preparer to include not only the individual who physically prepares a tax return for compensation, but also anyone "who employs one or more persons" to prepare tax returns for compensation.

141.    Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC, as shown above in paragraphs 5 through 138, are tax return preparers who have repeatedly and continually prepared or submitted returns or portions of returns (or employed or managed others who prepared or submitted returns or portions of returns) that contain unreasonable positions and substantially understate the liability for tax on the return. Nurse, Leon, Edwards, and Simple Solutions FL, LLC also advise, instruct, direct, and cause managers, preparers, and employees to engage in tax fraud, and to prepare federal income tax returns asserting unreasonable, unrealistic, frivolous and fraudulent positions. Accordingly, Nurse, Leon, Edwards, and Simple Solutions

FL, LLC knew (or should have known) of the unreasonable, unrealistic, frivolous and fraudulent positions.

142. Nurse, Leon, Edwards, and Simple Solutions FL, LLC, and those acting in concert with them and at their direction, have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694 by preparing federal tax returns that understate their customers' liabilities based on unrealistic, frivolous and reckless positions. Nurse, Leon, Edwards, and Simple Solutions FL, LLC, through the actions described above, also recklessly or intentionally disregard IRS rules or regulations.

143. Nurse, Leon, Edwards, and Simple Solutions FL, LLC, and those acting in concert with them and at their direction, have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6695. The Treasury regulations promulgated under 26 U.S.C. § 6695(g) prohibit a return preparer from claiming the EITC without first conducting proper due diligence and documenting his or her compliance with the due diligence requirements. *See* 26 C.F.R. § 1.6695-2 (2011). Not only do Nurse, Leon, Edwards, and Simple Solutions FL, LLC fail to conduct proper due diligence or comply with the due diligence requirements, but they also advise, encourage, and cause managers, preparers, and employees (of Nurse and Simple Solutions FL, LLC) to circumvent the due diligence requirements and to ignore or disregard the information provided by customers.

144. Nurse's, Leon's, Edwards', and Simple Solutions FL, LLC's failure to comply with the due diligence requirements for the EITC violates Treasury Regulations and their willingness to falsify information to obtain the EITC for their customers shows a reckless and/or intentional disregard of IRS rules and regulations.

145.    Nurse, Leon, Edwards, and Simple Solutions FL, LLC, and those acting in concert with them and at their direction, have continually and repeatedly prepared federal income tax returns that claim the EITC for customers, where Nurse, Leon, Edwards, and Simple Solutions FL, LLC, and those acting in concert with them and at their direction, have not conducted, let alone documented, the required due diligence procedures.

146.    Nurse, Leon, Edwards, and Simple Solutions FL, LLC also fail to comply with 26 U.S.C. § 6695(a), which requires that a tax return preparer provide a copy of the completed tax return to the taxpayer.

147.    Nurse's, Leon's, Edwards', and Simple Solutions FL, LLC's continual and repeated violations of 26 U.S.C. §§ 6694 and 6695 fall within 26 U.S.C. § 7407(b)(1)(A), and thus are subject to an injunction under 26 U.S.C. § 7407.

148.    Nurse's, Leon's, Edwards', and Simple Solutions FL, LLC's continual and repeated fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws falls within 26 U.S.C. § 7407(b)(1)(D), and thus is subject to an injunction under 26 U.S.C. § 7407.

149.    Nurse, Leon, Edwards, and Simple Solutions FL, LLC, and those acting in concert with them and at their direction, have continuously and repeatedly guaranteed refunds to customers and guaranteed the allowance of tax credits, including but not limited to the EITC. This conduct falls within 26 U.S.C. § 7407(b)(1)(C), and thus is subject to an injunction under 26 U.S.C. § 7407.

150.    If Nurse, Leon, Edwards, and Simple Solutions FL, LLC are not enjoined from all tax preparation, they and those acting in concert with them and at their direction are likely to continue to prepare and file false and fraudulent tax returns.

151.    Nurse's, Leon's, Edwards', and Simple Solutions FL, LLC's continual and repeated conduct subject to an injunction under 26 U.S.C. § 7407, including their continual and repeated fabrication of expenses and deductions, is so flagrantly illegal and so egregious that it demonstrates that a narrow injunction prohibiting only specific conduct would be insufficient to prevent Nurse's, Leon's, Edwards', and Simple Solutions FL, LLC's interference with the proper administration of the internal revenue laws. Accordingly, Nurse, Leon, Edwards, and Simple Solutions FL, LLC should be permanently barred from acting as federal tax return preparers, and from owning, operating, managing, investing in, controlling, licensing, franchising, or working for a tax return preparation business.

**Count II**
**Injunction under 26 U.S.C. § 7408**

152.    Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under either 26 U.S.C. § 6700 or § 6701 if injunctive relief is appropriate to prevent recurrence of such conduct.

153.    Section 6701(a) of the Internal Revenue Code penalizes any person who aids or assists in, procures, or advises with respect to the preparation or presentation of a federal tax return, refund claim, or other document knowing (or having reason to believe) that it will be used in connection with any material matter arising under the internal revenue laws and knowing that if it is so used it will result in an understatement of another person's tax liability. Under 26 U.S.C. § 6701(c)(1), the term "procures" includes "ordering (or otherwise causing) a subordinate to do an act," as well as "knowing of, and not attempting to prevent, participation by a subordinate in an act."

154.    Nurse, Leon, Edwards, and Simple Solutions FL, LLC, through the actions detailed above in paragraphs 5 through 138, caused the presentation and preparation of false,

fraudulent, and abusive tax returns and other documents. Nurse, Leon, Edwards, and Simple Solutions FL, LLC prepare, assist, and/or advise with respect to the presentation and preparation of federal tax returns for customers that they know will understate their correct tax liabilities, because Nurse, Leon, Edwards, and Simple Solutions FL, LLC knowingly prepare, assist, and/or advise with respect to the presentation and preparation of returns claiming bogus expenses and deductions. Nurse, Leon, Edwards, and Simple Solutions FL, LLC procured and assisted the preparation of false and fraudulent tax returns by filing and encouraging the filing of tax returns they knew were false or fraudulent, and by training and supervising tax return preparers engaging in tax fraud. Nurse, Leon, Edwards, and Simple Solutions FL, LLC have thus engaged in conduct subject to a penalty under 26 U.S.C. § 6701.

155.    Nurse, Leon, Edwards, and Simple Solutions FL, LLC are likely to continue violating the law absent an injunction. Tax return preparation is Nurse's, Leon's, Edwards', and Simple Solutions FL, LLC's primary source of revenue. To maximize that income, Nurse, Leon, Edwards, and Simple Solutions FL, LLC prepare, and instruct and direct managers and preparers to prepare, fraudulent returns. That fraudulent conduct, in turn, gives Nurse, Leon, Edwards, and Simple Solutions FL, LLC a competitive edge over law-abiding preparers. It also provides a means for Nurse, Leon, Edwards, and Simple Solutions FL, LLC to further exploit their customers by charging them unconscionably high fees, while Nurse's, Leon's, Edwards', and Simple Solutions FL, LLC's fraud simultaneously and callously exposes their customers to possible civil and criminal liability.

156.    If the Court does not enjoin Nurse, Leon, Edwards, and Simple Solutions FL, LLC, they are likely to continue to engage in conduct subject to penalty under 26 U.S.C. § 6701. The preparation of tax returns claiming improper expenses and deductions by Nurse, Leon,

Edwards, and Simple Solutions FL, LLC, and those acting in concert with them and at their direction, is widespread over many customers and tax years. Injunctive relief is therefore appropriate under 26 U.S.C. § 7408.

**Count III**
**Injunction under 26 U.S.C. § 7402(a)**
**Necessary to Enforce the Internal Revenue Laws**

157.    Section 7402 of the Internal Revenue Code authorizes a district court to issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws.

158.    Nurse, Leon, Edwards, and Simple Solutions FL, LLC, through the actions described above in paragraphs 5 through 138, including, but not limited to, intentionally understating their customers' tax liabilities and charging unconscionable and undisclosed fees for the preparation of federal tax returns that intentionally understate their customers' tax liabilities, have engaged in conduct that substantially interferes with the enforcement of the internal revenue laws.

159.    Unless enjoined, Nurse, Leon, Edwards, and Simple Solutions FL, LLC, and those acting in concert with them and at their direction, are likely to continue to engage in such improper conduct and interfere with the enforcement of the internal revenue laws. If Nurse, Leon, Edwards, and Simple Solutions FL, LLC are not enjoined from engaging in fraudulent and deceptive conduct, the United States will suffer irreparable injury by providing federal income tax refunds to individuals not entitled to receive them.

160.    While the United States will suffer irreparable injury if Nurse, Leon, Edwards, and Simple Solutions FL, LLC are not enjoined, Nurse, Leon, Edwards, and Simple Solutions FL, LLC will not be harmed by being compelled to obey the law.

161.    Enjoining Nurse, Leon, Edwards, and Simple Solutions FL, LLC is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop Nurse's, Leon's, Edwards', and Simple Solutions FL, LLC's illegal conduct and the harm it causes the United States and the Defendants' customers.

162.    The Court should impose injunctive relief under 26 U.S.C. § 7402(a).

**Count IV**
**Disgorgement under 26 U.S.C. § 7402(a)**
**Necessary to Enforce the Internal Revenue Laws**

163.    Section 7402 of the Internal Revenue Code authorizes a district court to issue orders, judgments, and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws.

164.    Nurse's, Leon's, Edwards', and Simple Solutions FL, LLC's conduct, described above in paragraphs 5 through 138, substantially interferes with the enforcement of the internal revenue laws and has caused the United States to issue tax refunds to individuals not entitled to receive them.  Nurse, Leon, Edwards, and Simple Solutions FL, LLC have unjustly profited at the expense of the United States by subtracting their exorbitant fees from those refunds.

165.    Nurse, Leon, Edwards, and Simple Solutions FL, LLC are not entitled to these ill-gotten gains. But for the Defendants' conduct, these bogus refunds would not have been issued.

166.    The Court should enter an order under 26 U.S.C. § 7402(a) requiring Nurse, Leon, Edwards, and Simple Solutions FL, LLC to disgorge to the United States the gross receipts (in the form of fees subtracted from customers' tax refunds) that Nurse, Leon, Edwards, and Simple Solutions FL, LLC received for the preparation of federal tax returns making false and/or fraudulent claims.

WHEREFORE, the United States of America prays for the following:

A.      That the Court find that Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, continually and repeatedly engaged in other fraudulent or deceptive conduct that substantially interferes with the administration of the tax laws, and that a narrower injunction prohibiting only this specific misconduct would be insufficient;

B.      That the Court, pursuant to 26 U.S.C. § 7407, enter a permanent injunction prohibiting Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC from acting as federal tax return preparers;

C.      That the Court find that Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC have engaged in conduct subject to penalty under 26 U.S.C. § 6701, and that injunctive relief under 26 U.S.C. § 7408 is appropriate to prevent a recurrence of that conduct;

D.      That the Court find that Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC have engaged in conduct that interferes with the enforcement of the internal revenue laws, and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402(a);

E.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter a permanent injunction prohibiting Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC, and all those in active concert or participation with them, from:

(1)      acting as federal tax return preparers or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than themselves;

(2)     preparing or assisting in preparing federal tax returns that they know or reasonably should know would result in an understatement of tax liability or the overstatement of federal tax refund(s) as penalized by 26 U.S.C. § 6694;

(3)     owning, operating, managing, working in, investing in, providing capital or loans to, receiving fees or remuneration from, controlling, licensing, consulting with, or franchising a tax return preparation business;

(4)     training, instructing, teaching, and creating or providing cheat sheets, memoranda, directions, instructions, or manuals, pertaining to the preparation of federal tax returns;

(5)     maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

(6)     engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

(7)     engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

F.      That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order requiring Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC to immediately and permanently close, because of the pervasive fraud, all tax return preparation stores that they own directly or through any other entity, and whether those stores do business as Simple Solutions or under any other name;

G.      That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order appointing a receiver to sell all of the hard assets, such as computers (after any and all taxpayer information has been removed), electronics, and furniture, for all tax return preparation stores that Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC own directly or through any other entity, and whether those stores do business as Simple Solutions or under any other name;

55

H.     That the Court, pursuant to 26 U.S.C. § 7402(a), enter an order prohibiting Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC, directly or through any other entity, from assigning, transferring, or selling any franchise agreement, independent contractor agreement, or employment contract related to Simple Solutions FL, LLC, or any other tax return preparation business to which they or any entity under their control is a party;

I.      That the Court, pursuant to 26 U.S.C. § 7402(a), enter an order barring Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC from: (1) selling to <u>any</u> individual or entity a list of customers, or any other customer information, for whom Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC, and any other business or name through which Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC, or those acting at their direction, have at any time since 2014 prepared a tax return; (2) assigning, disseminating, providing, or giving to any current or former franchisee, General Sales Manager, District Sales Manager, manager, tax return preparer, employee, or independent contractor of Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC, or any other business through which Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC prepare tax returns or own or franchise a tax return preparation business, a list of customers or any other customer information for customers for whom Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC, and any other business or name through which Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC, or those acting at their direction, have at any time since 2014 prepared a tax return; and (3) selling to <u>any</u> individual or entity any proprietary information pertaining to Simple Solutions FL, LLC, and any other business or name through which Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC, or those acting at their direction, have at any time since 2014 prepared a tax return;

J.      That the Court, pursuant to 26 U.S.C. § 7402, enter an order requiring Angela

Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC to disgorge to the United

States the gross receipts (the amount of which is to be determined by the Court) that Angela

Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC received (in the form of fees

subtracted from customers' tax refunds) for the preparation of tax returns that make or report

grossly incompetent, negligent, reckless, and/or fraudulent claims, deductions, credits, income,

expenses, or other information that results in the understatement of taxes, prepared since 2018 by

Angela Nurse, Joe Leon, Wendy Edwards, and/or Simple Solutions FL, LLC, and at any tax

preparation store franchised, owned, or managed by Angela Nurse, Joe Leon, Wendy Edwards,

and/or Simple Solutions FL, LLC;

K.      That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order

requiring Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC to contact,

within 30 days of the Court's order, by United States mail and, if an e-mail address is known, by

e-mail, all persons for whom Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions

FL, LLC, and their managers, employees, and tax return preparers prepared federal tax returns or

claims for a refund for tax years beginning in 2014 and continuing through this litigation to

inform them of the permanent injunction entered against them, including sending a copy of the

order of permanent injunction but not enclosing any other documents or enclosures unless agreed

to by counsel for the United States or approved by the Court;

L.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order

requiring Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC to produce

to counsel for the United States, within 30 days of the Court's order, a list that identifies by

name, social security number, address, e-mail address, and telephone number and tax period(s)

all persons for whom Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC, and their managers, employees, and tax return preparers prepared federal tax returns or claims for a refund for tax years beginning in 2014 and continuing through this litigation;

M.     That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order requiring Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, address, e-mail address, and telephone number all principals, officers, managers, franchisees, employees, and independent contractors of Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC from 2014 to the present;

N.     That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an injunction requiring Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC to provide a copy of the Court's order to all principals, officers, managers, franchisees, employees, and independent contractors of Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC within 15 days of the Court's order, and provide to counsel for the United States within 30 days a signed and dated acknowledgment of receipt of the Court's order for each person whom Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC provided a copy of the Court's order;

O.     That the Court retain jurisdiction over Angela Nurse, Joe Leon, Wendy Edwards, and Simple Solutions FL, LLC and over this action to enforce any permanent injunction entered against them;

P.     That the United States be entitled to conduct discovery to monitor Angela Nurse's, Joe Leon's, Wendy Edwards', and Simple Solutions FL, LLC's compliance with the terms of any permanent injunction entered against them; and

Q.  That the Court grant the United States such other and further relief, including costs, as

is just and reasonable.

DATED: September 12, 2019       MARIA CHAPA LOPEZ
                                    United States Attorney

                                    RICHARD E. ZUCKERMAN
                                    Principal Deputy Assistant Attorney General


                                    _s/ Daniel A. Applegate_____
                                    DANIEL A. APPLEGATE
                                    JARED S. WIESNER
                                    SAMUEL P. ROBINS
                                    Trial Attorneys, Tax Division
                                    U.S. Department of Justice
                                    P.O. Box 7238, Ben Franklin Station
                                    Washington, D.C.  20044
                                    Telephone: (202) 353-8180
                                    Fax: (202) 514-6770
                                    daniel.a.applegate@usdoj.gov

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Daniel A. Applegate, U.S. Dept. of Justice, Tax Div., 202-353-8180
P.O. Box 7238, Ben Franklin Stn., Washington, D.C. 20044

## DEFENDANTS

ANGELA NURSE; JOE LEON; WENDY EDWARDS; and
SIMPLE SOLUTIONS FL, LLC

County of Residence of First Listed Defendant    Volusia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**  **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane  ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability  ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| & Enforcement of Judgment | Slander Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Product Liability | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted | Liability  ☐ 368 Asbestos Personal | | New Drug Application | ☐ 470 Racketeer Influenced and |
| Student Loans | ☐ 340 Marine Injury Product | | ☐ 840 Trademark | Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | Liability  **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer |
| of Veteran's Benefits | ☐ 350 Motor Vehicle  ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Protection Act |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle  ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | Product Liability  ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Property Damage | Relations | ☐ 864 SSID Title XVI | Exchange |
| ☐ 196 Franchise | Injury  ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| | ☐ 362 Personal Injury - Product Liability | ☐ 751 Family and Medical | | ☐ 891 Agricultural Acts |
| | Medical Malpractice | Leave Act | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS**  **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights **Habeas Corpus:** | ☐ 791 Employee Retirement | ☒ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 220 Foreclosure | ☐ 441 Voting  ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment  ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Sentence | | 26 USC 7609 | Act/Review or Appeal of |
| ☐ 245 Tort Product Liability | Accommodations  ☐ 530 General | | | Agency Decision |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of |
| | Employment **Other:** | ☐ 462 Naturalization Application | | State Statutes |
| | ☐ 446 Amer. w/Disabilities - ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other  ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education  ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
26 U.S.C. sections 7402(a), 7407, and 7408
Brief description of cause:
Suit for permanent injunction barring defendants from preparing tax returns and disgorging ill-gotten gains

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE  Hon. Gregory A. Presnell
DOCKET NUMBER  6:17-cv-36

DATE
09/12/2019

SIGNATURE OF ATTORNEY OF RECORD
s/ Daniel A. Applegate

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**  **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| | ) |
| ANGELA NURSE; JOE LEON; WENDY EDWARDS; | ) |
| and SIMPLE SOLUTIONS FL, LLC | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No.  6:19-cv-1780

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Angela Nurse
100 New Britain, Apt. A
Ormond Beach, FL 32174

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Daniel A. Applegate
U.S. Deptartment of Justice, Tax Division
P.O. Box 7238, Ben Franklin Station
Washington, D.C. 20044

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No. 6:19-cv-1780

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| | ) |
| ANGELA NURSE; JOE LEON; WENDY EDWARDS; | ) |
| and SIMPLE SOLUTIONS FL, LLC | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No.  6:19-cv-1780

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Joe Leon
373 NW 4TH DIAGONAL, APT. 8
BOCA RATON, FL 33432-3769

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Daniel A. Applegate
U.S. Deptartment of Justice, Tax Division
P.O. Box 7238, Ben Franklin Station
Washington, D.C. 20044

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  6:19-cv-1780

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No.  6:19-cv-1780 |
| | ) | |
| ANGELA NURSE; JOE LEON; WENDY EDWARDS; | ) | |
| and SIMPLE SOLUTIONS FL, LLC | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Wendy Edwards
1180 Dal Maso Dr.
Daytona Beach, FL 32117

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Daniel A. Applegate
U.S. Deptartment of Justice, Tax Division
P.O. Box 7238, Ben Franklin Station
Washington, D.C. 20044

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  6:19-cv-1780

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | ) Civil Action No. 6:19-cv-1780 |
| | ) |
| ANGELA NURSE; JOE LEON; WENDY EDWARDS; and SIMPLE SOLUTIONS FL, LLC | ) |
| | ) |
| | ) |
| _Defendant(s)_ | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Simple Solutions FL, LLC
c/o Lois Cooper, Registered Agent
725 DR MARY MCLEOD BETHUNE BLVD.
DAYTONA BEACH, FL 32114

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Daniel A. Applegate
U.S. Deptartment of Justice, Tax Division
P.O. Box 7238, Ben Franklin Station
Washington, D.C. 20044

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____     _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  6:19-cv-1780

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: